Filed 9/24/20  Hills v. Wells Fargo Bank, N.A. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| RONALD HILLS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>WELLS FARGO BANK, N.A., et al.,<br><br>    Defendants and Respondents. | B297438<br>B300013<br><br>(Los Angeles County Super. Ct. No. BC713791) |

APPEALS from orders of the Superior Court of Los Angeles County, Terry Green, Judge.  Affirmed.

Ronald Hills, in pro. per., for Plaintiff and Appellant.

Snell & Wilmer, Michele Sabo Assayag, Joshua K. Partington, and Kimvi To for Defendants and Respondents Wells Fargo Bank, N.A., Craig Hansen, Asset Reliance, Inc., and Edward D. Testo.

No appearance for Defendants and Respondents Kimberly Martin-Bragg and George Barbour.

Ronald Hills appeals from an order granting a special motion to strike the complaint and awarding attorney fees under Code of Civil Procedure section 425.16[1] (the Anti-SLAPP[2] motion) in favor of Wells Fargo Bank, N.A., Asset Reliance, Inc., Craig Hansen, and Edward D. Testo (collectively Wells Fargo).[3]  (No. B297438.)  Hills also appeals from an order sustaining demurrers to Hills's first amended complaint without leave to amend and dismissing claims against Kimberly Martin-Bragg (Bragg) and George Barbour.[4]  (No. B300013.)  We will affirm the trial court's orders.

---

[1] Further statutory references are to the Code of Civil Procedure.

[2] "SLAPP is an acronym for strategic lawsuit against public participation."  (*Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1283, fn. 4 (*Salma*).)

[3] Hansen is a Wells Fargo Bank employee.  Asset Reliance is the company the United States District Court for the Central District of California authorized Wells Fargo Bank to employ or appoint to auction Ivan Rene Moore's personal property recovered from Kimberly Martin-Bragg's home.  Testo is an Asset Reliance employee.

The trial court describes Hills and Moore as "long-time associates," and explains that Hills was an officer of Moore's recording businesses.

[4] The complaint alleges that Barbour is Bragg's spouse, that he lives in her home, and that he has exercised "management and control" of the the property at issue.

"[A]n order sustaining a demurrer without leave to amend is not appealable."  (*Vitkievicz v. Valverde* (2012) 202 Cal.App.4th

1306, 1310, fn. 2.)  But a "signed order of dismissal is an appealable judgment."  (*Id.* at p. 1310, fn. 1.)

[5] The record Hills procured for both of these appeals is "fragmentary and disorganized."  (See *Martin-Bragg v. Moore* (2013) 219 Cal.App.4th 367, 370 (*Moore I*); also *Moore v. Martin-Bragg* (Oct. 25, 2019, B272445) [nonpub. opn.], p. 3, fn. 2 (*Moore III*).)  It is also "both technically and substantively deficient." (*Modarei v. Action Property Management, Inc.* (2019) 40 Cal.App.5th 632, 636, fn. 6.)

Hills requests that we reverse the trial court's order sustaining Bragg's and Barbour's demurrers to the first amended complaint.  The record, however, does not contain the demurrers or any of the briefing on the demurrers.  There is no reporter's transcript, settled statement, or agreed statement from the August 6, 2019 hearing on the demurrers.  Although the trial court granted requests for judicial notice submitted by both Hills on one hand and Bragg and Barbour on the other, neither the requests nor the exhibits are in the record.  The record *does* contain multiple copies of documents that have no bearing on the demurrers, which adds to the record's volume, but not to its utility.

The record Hills procured related to the Anti-SLAPP motion is no more helpful.  Wells Fargo provided a three-volume respondent's appendix that fills many (but not all) of the gaps in Hills's appendix.

Because the record before us does not provide a complete understanding of these matters, we briefly survey from our earlier opinions relevant parts of the landscape of the litigation Hills and Ivan Rene Moore have engaged in over almost a decade.

Along with a reply appendix, Hills filed a request that we judicially notice each of the documents in the reply appendix.  We " ' "take judicial notice of the truth of facts asserted in documents

3

"At one point, [Ivan Rene] Moore was the record owner of residential property [located at 6150 Shenandoah Avenue] in Ladera Heights.  For a time, [Moore and Bragg] lived there together." (*Moore v. Martin-Bragg* (Sept. 8, 2017, B276366) [nonpub. opn.], p. 2 (*Moore II*); *Moore III*, *supra*, B272445, at p. 3.)

"In 2011, [Bragg] initiated an unlawful detainer action against Moore, who countered with his own lawsuit to quiet title.  The trial court denied Moore's motion to consolidate the two matters and found in favor of [Bragg] in the unlawful detainer action." (*Moore II*, *supra*, B276366, at p. 2.)  In August 2013, we reversed the trial court's judgment and remanded to the trial court "for determination of the parties' rights to legal and beneficial title to the property, and their respective rights to possession based on that determination." (*Moore I*, *supra*, 219 Cal.App.4th at p. 395.)

"Meanwhile, having been evicted from the property without his personal belongings and with the appeal in *Moore* [*I*] pending, Moore initiated [an] action against [Bragg] for trespass to chattel,

such as orders, findings of fact and conclusions of law, and judgments." ' " (*Garcia v. Sterling* (1985) 176 Cal.App.3d 17, 22.) Although we take judicial notice of the existence of statements contained in the transcripts filed as part of a court record, the truth of those statements is not subject to judicial notice.  (*Ibid.*) Additionally, we decline to judicially notice documents that appear on their face to be incomplete or modified.  (*In re Edward Q.* (2009) 177 Cal.App.4th 906, 910, fn. 3.)  Hills's request for judicial notice is therefore granted as to exhibits 1, 11-12 and 16-17.  The request is granted as to the existence of and existence of statements contained in exhibits 2, 9-10, and 13-14.  The request is denied as to exhibits 3-8, 15, and 18.

conversion, negligence, and damages under Civil Code section 1965.  He also filed a companion case against [Bragg] on a variety of other theories (BC483652).  The trial court consolidated the two Moore lawsuits and subsequently bifurcated the trespass to chattel, conversion, and Civil Code section 1965 causes of action for jury trial.

"The jury determined the value of Moore's personal property was $2.5 million and awarded him that sum.  On the conversion cause of action, the jury also awarded Moore lost profits in the sum of $650,000.  The trial judge permitted Moore to amend his pleading during trial to conform to proof and add a prayer for return of the personal property.  The jury rendered an advisory verdict recommending the damages award be reduced by $2,500,000 if [Bragg] returned Moore's personal property." (*Moore II*, *supra*, B276366, at pp. 3-4, fn. omitted.)  The jury's verdict was eventually reduced to a final judgment for Moore against Bragg for $3,150,000, which this court's Division Five affirmed in *Moore II*.[6]  (*Id.* at pp. 3, 15.)

In May 2015, the United States District Court for the Eastern District of Wisconsin entered an amended judgment against Moore (and several entity defendants related to Moore) in an unrelated action in favor of Wells Fargo Bank (WFB) for $7,106,037.28.  The Wisconsin judgment allowed WFB to foreclose upon certain real properties owned by defendants and to "replevin the intangible property, personal property, royalties,

---

[6] The trial court concluded after a six-day bench trial in a different action that the real property at 6150 Shenandoah Avenue belonged to Bragg.  (*Moore III*, *supra*, B272445, at pp. 9, 11.)  We affirmed the trial court's judgment in *Moore III*.  (*Id.* at p. 19.)

profits and other collateral pledged by the defendants." WFB filed a notice of judgment lien with the California Secretary of State on August 11, 2016.

On September 28, 2016, Bragg, who was still in possession of Moore's personal property that was now subject to the Wisconsin judgment, filed a Chapter 7 bankruptcy petition. In December 2016, WFB filed a motion for relief from the bankruptcy stay, requesting the bankruptcy court's permission to "proceed under applicable nonbankruptcy law to enforce its remedies to repossess and sell" Moore's personal property in Bragg's possession. The bankruptcy court entered an order granting WFB's motion in January 2017.

WFB secured a writ of execution for its Wisconsin judgment in the United States District Court for the Central District of California on February 3, 2017. On April 20, 2017, the United States Marshal seized Moore's personal property from Bragg's home consistent with the district court's order instructing it to do so.[7]

On May 4, 2017, Hills filed a complaint in the United States District Court for the Central District of California alleging a variety of federal and state law claims against the United States Marshal and the respondents here. In the federal complaint, Hills alleged that Hills had "kept his business and professional property" at 6150 Shenandoah Avenue, and that "[o]n February 12, 2012," when Bragg evicted Moore from the property, his personal property was "wrongfully kept by [Bragg]

---

[7] WFB later moved the district court, and the district court granted, an order allowing WFB to sell Moore's personal property the Marshal seized from Bragg's home and apply the proceeds to the Wisconsin judgment.

since then." "Since the eviction in February" 2012, according to the federal complaint, Hills "has been seeking the return of his property. In 2013," the complaint alleges, "[Moore] won a conversion and trespass to chattel action for some of these properties," but Bragg never returned them.

On June 28, 2018, the district court dismissed Hills's complaint with prejudice as to the federal claims, and without prejudice as to the state law claims.

On July 13, 2018, Hills filed the complaint in this action alleging 10 causes of action against the respondents here, among other defendants.[8] As in the federal complaint, Hills alleged that he "kept . . . personal and business properties at the residence located at 6150 Shenandoah Avenue," that Bragg "unlawfully evicted" Moore from the property in 2012, that Bragg never returned the property even after "Moore won a conversion and trespass to chattel action for some of [the] properties," that Bragg and Barbour conspired with Wells Fargo to take the property, and that Wells Fargo took the property.

Wells Fargo responded to Hills's complaint with demurrers (filed on August 20, 2018) and the Anti-SLAPP motion at issue here (filed on September 7, 2018).[9] The trial court ordered Wells

---

[8] The causes of action in the original complaint are labeled (1) conversion, (2) breach of fiduciary duty of bailment agreement, (3) intentional interference with prospective economic advantage, (4) negligent interference with prospective economic advantage, (5) trespass to chattel, (6) replevin, (7) violations of Business and Professions Code section 17200 et seq., (8) negligence, (9) "punitive damage allegation," and (10) "for preliminary and permanent injunction."

[9] The record contains no indication how Bragg and Barbour responded to Hills's original complaint.

7

Fargo's demurrers off calendar when Hills filed his first amended complaint (FAC); the Anti-SLAPP motion remained on calendar. (See *Salma*, *supra*, 161 Cal.App.4th at pp. 1293-1294.)

Hills filed the FAC on March 5, 2019, this time alleging 12 causes of action against the respondents and other defendants, but based on the same basic set of allegations.[10]

Bragg and Barbour demurred to the FAC and requested judicial notice of at least 15 documents. Hills requested judicial notice of at least an additional 23 documents.

The trial court heard Wells Fargo's Anti-SLAPP motion on April 30, 2019. The trial court granted Wells Fargo's request for judicial notice it filed in support of its demurrers to the original complaint, granted Wells Fargo's Anti-SLAPP motion, and awarded Wells Fargo $12,824 in attorney fees in connection with the Anti-SLAPP motion. Hills filed a premature notice of appeal from the trial court's order that we will deem timely.[11]

---

[10] The cover of the complaint lists 12 causes of action numbered as 13—intentional interference with prospective economic advantage is listed as causes of action numbers six and seven. The body of the complaint skips number 12 and labels the twelfth cause of action as 13. The FAC's causes of action are (1) intentional misrepresentation, (2) conversion, (3) concealment under Civil Code section 1710, (4) constructive fraud under Civil Code section 1573, (5) negligent misrepresentation, (6) intentional interference with prospective economic advantage, (7) negligent interference with prospective economic advantage, (8) trespass to chattel, (9) replevin, (10) violation of Business and Professions Code sections 17200 et seq., (11) negligence, and (12) (incorrectly labeled as (13)) constructive trust.

[11] Hills filed his notice of appeal in No. B297438 on May 2, 2019; the trial court did not file its order granting the Anti-SLAPP motion and awarding attorney fees until May 13, 2019.

On August 6, 2019, the trial court heard Bragg and Barbour's demurrers to the FAC.  The trial court granted Bragg's and Barbour's request for judicial notice of eight documents and Hills's request for judicial notice of seven more documents.  The trial court further granted both parties' requests for judicial notice in their entirety (at least 15 documents for Bragg and Barbour and at least 23 documents for Hills, none of which are part of our record) "as to the existence of the documents, and the fact that certain statements were made, but not as to the truth of the contents."  The trial court sustained the demurrers without leave to amend and dismissed Bragg and Barbour from the case.  Although it is not in our record, our case file reflects that Hills filed a timely notice of appeal from the trial court's order.

## DISCUSSION

A. Wells Fargo's Anti-SLAPP Motion

"The anti-SLAPP statute is a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of First Amendment rights of petition and free speech."  (*Taheri Law Group v. Evans* (2008) 160 Cal.App.4th 482, 488.)  Section 425.16 provides, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that

---

We will treat the notice of appeal as having been filed immediately after the trial court entered its order.  (Cal. Rules of Court, rule 8.406(d); see also *Lee v. Kim* (2019) 41 Cal.App.5th 705, 718, fn. 7.)

9

the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)
An " 'act in furtherance of a person's right of petition or free
speech . . . includes: (1) any written or oral statement or writing
made before a legislative, executive, or judicial proceeding, or any
other official proceeding authorized by law, (2) any written or oral
statement or writing made in connection with an issue under
consideration or review by a legislative, executive, or judicial
body, or any other official proceeding authorized by law . . . ." (*Id.*
at subd. (e).) Section 425.16 is to be construed broadly. (*Id.* at
subd. (a).)

We review the trial court's ruling de novo, using a two-step
approach. (*Tuchscher Development Enterprises, Inc. v. San Diego
Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1231-1232.) We
determine first whether the moving party has made a threshold
showing that the challenged cause of action arises from protected
activity. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier
I*).) If the moving party meets this burden, we determine
whether the opposing party has established a probability of
prevailing on the claim. (*Ibid.*) "Only a cause of action that
satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises
from protected speech or petitioning *and* lacks even minimal
merit—is a SLAPP, subject to being stricken under the statute."
(*Id.* at p. 89.) At each step of the analysis, we consider "the
pleadings, and supporting and opposing affidavits stating the
facts upon which the liability or defense is based." (§ 425.16,
subd. (b)(2).)

1. Arising From Wells Fargo's Protected Activity

In determining whether the threshold "arising from"
requirement is met, we look for "the *principal thrust or gravamen*
of the plaintiff's cause of action." (*Martinez v. Metabolife*

10

*Internat., Inc.* (2003) 113 Cal.App.4th 181, 188.) A cause of action arises from an act if that act forms the basis for the cause of action. (*Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1537.) The "anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier I, supra*, 29 Cal.4th at p. 92.)

Hills contends that the gravamen of the complaint is attempting to recover personal property that belongs to him. Citing the original complaint's paragraphs 21 through 41, however, the trial court concluded that the gravamen of the complaint "is the act of levying upon the contents of 6150 Shenandoah [Avenue], which [Hills] claims belong to him."

The complaint's factual allegations regarding Wells Fargo begin at paragraph 21. Hills alleged that Wells Fargo conspired with Bragg and Barbour "to take dominion and control of [Hills's] personal and business property" without Hills's consent. Paragraphs 21 through 41 clarify that Hills's allegations are based on the Wells Fargo respondents working with the United States Marshal to collect personal property from 6150 Shenandoah Avenue. Based on the allegations in the complaint, we agree with the trial court that the gravamen of the complaint is that Wells Fargo used judicial process to levy on its Wisconsin judgment against Moore by recovering from Bragg's home Moore's personal property that Hills now claims belongs to him.

Actions taken to collect a judgment constitute protected activity. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055, 1065.)

Hills further contends, however, that because he was not named as a defendant in the Wisconsin lawsuit that resulted in

11

Wells Fargo's judgment, Wells Fargo's conduct in levying on its Wisconsin judgment against *Moore* is not protected activity as to *Hills*. We disagree. It is the gravamen of the allegations about a defendant's conduct—not the identity of the plaintiff—that drives the step one analysis. Whether Hills was subject to the Wisconsin judgment does not bear on whether Wells Fargo's use of judicial process to levy on that judgment was protected activity.

2. Hills's Probability of Prevailing

Because Wells Fargo has made the required threshold showing that Hills's causes of action arise from protected activity, we next consider whether Hills demonstrated a probability of prevailing on his claims. "In order to establish the necessary probability of prevailing, [a] plaintiff [is] required both to plead claims that [are] legally sufficient, and to make a prima facie showing, by admissible evidence, of facts that would merit a favorable judgment on those claims, assuming [the] plaintiff's evidence were credited." (*1-800 Contacts, Inc. v. Steinberg* (2003) 107 Cal.App.4th 568, 584.)

At this stage of the proceedings, the plaintiff need only demonstrate a "minimum level of legal sufficiency and triability." (*Castleman v. Sagasar* (2013) 216 Cal.App.4th 481, 490.) "The evidence favorable to the plaintiff is accepted as true, while the defendant's evidence is evaluated to determine if it defeats the plaintiff's claim as a matter of law, e.g., on grounds of privilege or immunity." (*Ibid.*) Thus, the plaintiff's burden at this step is akin to the standard on review of a motion for summary judgment, nonsuit, or directed verdict. (*Greka Integrated, Inc. v. Lowrey* (2005) 133 Cal.App.4th 1572, 1581.) As at step one, "we again consider the pleadings and the supporting and opposing

12

declarations stating the facts on which the claims are based." (*Ibid.*) The "plaintiff must satisfy the second prong of the test and 'establish *evidentiary* support for [the] claim.' " (*Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 775 (*Navellier II*).)

The trial court concluded that Hills's claims failed on two grounds. First, the trial court concluded that Hills had produced insufficient evidence "to make a prima facie case that he owns the property" that is the subject of the litigation. Second, the trial court concluded that Hills's claims were barred based on issue preclusion—that the ownership of the property that is the subject of this litigation had been preclusively litigated in the federal courts. We agree with the trial court's conclusion that Hills's claims against Wells Fargo are barred by issue preclusion.

"Collateral estoppel, or issue preclusion, 'precludes relitigation of issues argued and decided in prior proceedings.' " (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896.) " 'Traditionally, we have applied the doctrine only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.' " (*Thee Aguila, Inc. v. Century Law Group, LLP* (2019) 37 Cal.App.5th 22, 28-29.)

The specific question of Hills's ownership of the property at issue in this action was litigated in Wells Fargo's Central District action levying on its Wisconsin federal court judgment against

13

Moore.  In a June 8, 2017 order regarding Moore's motion to vacate the district court's order instructing the United States Marshal to levy on Moore's property in Bragg's possession, the district court noted that "*Mr. Hills and [another claimant] claim to be the owners of some of the personal property at issue* but only identify one or two items each and do not present any documentary, admissible evidence that they own any of the property.  Moore mentions other people that purportedly own some of the property but presents no declarations or proof from these other people, named and unnamed.  [¶]  There is no evidence of fraud.  [¶]  The Court, nonetheless, will require Wells Fargo to submit an inventory of the personal property seized at [Bragg's] house on April 20, 2017 with a verification [regarding the specific items seized].  *Wells Fargo, before sale, must establish Moore's ownership*."  (Italics added.)

Wells Fargo established Moore's ownership of the property to the district court's satisfaction, and on June 23, 2017 the district court ordered the sale of the seized property.  The United States Court of Appeals for the Ninth Circuit affirmed the district court's order, noting that "[t]he district court did not clearly err in determining that the items levied upon by the U.S. Marshal were the personal property of Moore or his companies."  (*Wells Fargo Bank, N.A. v. Rufftown Entertainment Group, Inc.* (9th Cir. Apr. 16, 2018, No. 17-56005) [nonpub. opn.] p. 2.)

The district court's orders establish that Hills participated in the litigation regarding the ownership of the property at issue here and that the district court specifically considered Hills's assertion of ownership and rejected it.  We agree with the trial court that Hills did not demonstrate any probability that he would prevail on any of his claims against Wells Fargo.

14

B. Bragg's and Barbour's Demurrers

The trial court heard Bragg's and Barbour's demurrers to the FAC on August 6, 2019, and the same day entered an order granting Bragg's, Barbour's, and Hills's requests for judicial notice, sustaining Bragg's and Barbour's demurrers to the FAC without leave to amend, and dismissing Bragg and Barbour from the case.

"In determining whether plaintiff[ ] properly stated a claim for relief, our standard of review is clear:  ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]  *We also consider matters which may be judicially noticed.*"  [Citation.]  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff.' "  (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126, italics added (*Zelig*).)

The FAC alleged 12 causes of action (erroneously listed and labeled as 13) that the trial court separated into two categories:  "(1) claims for damages stemming from the actual conversion of the property (i.e. conversion, interference, trespass to chattel, replevin, and constructive trust), and (2) claims that [Bragg and

15

Barbour] lied to the various federal judges that oversaw the levy on and sale of the property (i.e. fraud and negligence)."[12]

The trial court concluded that Hills's causes of action against Bragg and Barbour regarding the taking of his personal property were time-barred. The trial court correctly observed that "[t]he statute of limitations for conversion, trespass to chattel, and replevin is three years. [(§ 338.)] Interference torts have a two-year limitations period. [(§ 339; *Kolani v. Gluska* (1998) 64 Cal.App.4th 402, 408.)] According to the FAC . . . and the matters judicially noticeable, [Hills] was deprived of his property no later than 2012, and perhaps earlier. Therefore, the limitations periods for all these claims were up in 2015. This case was filed in the middle of 2018; the statutes for these various claims may well have run two or (in the case of the interference torts) three times over."

The trial court concluded that Hills's fraud and negligence causes of action (intentional misrepresentation, concealment, constructive fraud, negligent misrepresentation, and negligence) concerning allegations regarding the levy and sale of the personal property at issue were barred by the litigation privilege. "The bases of these claims are allegations that [Bragg and Barbour]

---

[12] The trial court explained that the "cause of action for unfair competition is the only claim which crosses both categories. However, because it is a fundamentally derivative claim with a 4-year statute of limitations (Bus. & Prof. Code § 17208), its fate is directly tied to the fate of the other causes of action." The trial court explained that it would not independently examine the unfair competition cause of action because "[t]o the extent it is based on conversion, it's time-barred; to the extent it's based on alleged fraud in court, it's barred by the [litigation] privilege."

16

lied in various federal court proceedings that led up to the levy and sale, telling the federal judges that" the property belonged to Moore rather than Hills. "The communications to which [Hills] objects are communications made in judicial proceedings. Therefore, they cannot form the basis for any liability on the part of [Bragg or Barbour]. This is as straightforward a case for the application of the [litigation] privilege as this court ever sees." (Fn. omitted.)

Hills contends that the trial court improperly considered and relied on what Hills characterizes as irrelevant materials from unrelated lawsuits when it ruled on Bragg's and Barbour's demurrers, and argues that we should reverse the trial court's order on that basis. We disagree for two reasons.

First, as in any appeal, "the burden is on the appellant to establish the existence of prejudicial error affecting the merits of his appeal, and such prejudice must affirmatively appear in order to warrant a reversal." (*Kyne v. Eustice* (1963) 215 Cal.App.2d 627, 635-636.) At the hearing on Bragg's and Barbour's demurrers, the trial court considered requests for judicial notice of at least 38 documents—15 submitted by Bragg and Barbour, and another 23 submitted by Hills. The trial court granted Bragg's and Barbour's request for judicial notice "as to Exhibits B, E-F, H, K-L, and N-O," and granted Hills's request for judicial notice "as to Exhibits B-D, I, P, R, and W." It granted all other requests for judicial notice "*as to the existence of the documents, and the fact that certain statements were made, but not as to the truth of the contents.*" (Original italics.) We note again that our review of a trial court's order sustaining demurrers includes "matters which may be judicially noticed." (*Zelig, supra*, 27 Cal.4th at p. 1126.) The record Hills procured for our review,

17

however, contains neither the requests for judicial notice (either party's) nor the documents for which notice was requested.  The propriety of any information that the trial court may have considered outside the four corners of the FAC, therefore, is not properly before us.  For that reason, it would be appropriate to affirm the trial court's judgment based on Hills's failure to procure an adequate record for our review.

Second, even without regard to documents that may have been judicially noticed, the allegations in the complaint establish Bragg's and Barbour's absolute defenses.

In paragraph 13 of the FAC, Hills alleges that he "held the 6150 Shenandoah real property in trust for the Moore family and their corporations, and they both resided there until 2012, when [Bragg] caused them to be wrongfully evicted, claiming ownership . . . ." and that "[Bragg locked out [Moore] and [Hills] after the eviction and kept all of their property."  Again in paragraph 18, Hills describes that "[o]n February 12, 2012," Bragg "wrongfully evicted" Moore from the Shenandoah Avenue property, and "took wrongful control over [Hills's] property."  The statute of limitations for the FAC's torts alleging Bragg's wrongful retention, dominion, and control over Hills's personal property, then, began running on February 12, 2012, at the latest, and expired in 2014 and 2015.  (§§ 338, 339.)

The misrepresentations that Hills identified as the basis for his misrepresentation causes of action expressly relate to statements made in connection with Wells Fargo's effort to recover the property and satisfy the Wisconsin judgment.  For example, in his misrepresentation causes of action, Hills alleged that Bragg and Barbour (among other defendants) "proceeded to provide[ ] false testimony and false [d]eclarations to the United

18

States District Court and the United States Bankruptcy Court that [Hills's alleged personal property] are Replevin properties subject to seizure in their zeal to unlawfully take dominion and control over [Hills's] personal property" and that Bragg and Barbour (and other defendants) "failed to apprise [various courts] and others that the property they were taking [by levy and sale] belonged to and was owned by [Hills] . . . ." We agree with the trial court, based solely on the allegations in the complaint, that those causes of action are squarely barred by the litigation privilege. (Civ. Code, § 47, subd. (b).)

Finally, Hills has not demonstrated that the complaint could be amended to state any viable cause of action against Bragg or Barbour. Consequently, we find no error in the trial court's order sustaining Bragg's and Barbour's demurrers to the FAC, and no abuse of discretion in its decision to do so without granting Hills leave to amend the complaint. (See *Camsi IV v. Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1542.)

## DISPOSITION

The trial court's orders are affirmed. Respondents are entitled to their costs on appeal.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.          SINANIAN, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.